NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1514
_____

ALBERT FRAZIER,
Appellant

v.

SECRETARY PENNSYLVANIA DEPARTMENT OF CORRECTIONS;
ATTORNEY GENERAL PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-14-cv-0872)
District Judge:  Hon. David S. Cercone
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 17, 2020

Before:  JORDAN, GREENAWAY, JR., and KRAUSE, *Circuit Judges.*

(Filed: January 21, 2020)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Albert James Frazier appeals the dismissal of his habeas petition. He argues that the limitations placed on his cross-examination of a key government witness infringed his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. We disagree and will affirm.

## I.   BACKGROUND

This case arises from a drug sale turned violent. On October 2, 2004, Frazier led two men to believe he was going to engage in a drug transaction with them. His two counterparts drove to the designated place, and when they arrived, Frazier and another man entered the back seat of the car while a third man stood in front of the car. When the driver of the car turned to look behind him, Frazier pointed a gun at him and told him not to move. Gunfire erupted. The driver stepped on the gas pedal, and the car went over a hill and crashed. Though wounded, both the driver and the passenger were able to exit the car. The driver survived, but the passenger died from his wounds. Frazier was charged with criminal homicide, two counts of criminal conspiracy, criminal attempt, aggravated assault, and a violation of the Pennsylvania Uniform Firearms Act.

At trial, the driver of the car testified, identifying Frazier as one of his assailants. The driver was facing drug charges based on a subsequent incident, and, before the driver was called as a witness, the prosecution sought to exclude questioning about those charges. Frazier's counsel objected, pointing to the scheduling of the driver's case, and saying "every time that our case is listed for trial, his case … gets postponed." (App. at 186a.) In an in limine ruling, the trial court instructed, "You may ask if he has any

2

criminal matters pending.  If he says yes, you may then ask if he expects any consideration from the Commonwealth for his testimony here without detail as to charge, without detail as to amounts of drugs or anything else."  (App. at 187a.)

On direct examination, anticipating the defense cross-examination, the prosecutor asked the driver whether he had received "any consideration on any of [his] pending cases to testify" against Frazier.  (App. at 230a.)  The driver said he had not.  On cross-examination, defense counsel began by asking "you have a few pending cases, is that correct?"  (App. at 233a.)  The driver first responded that he didn't "want to talk about that," but subsequently confirmed that he had two cases pending. (App. at 233a.)  Defense counsel then said: "Now, we can't get into the cases.  I am not asking you to divulge anything about the cases.  I do want to discuss the timing, however."  (App. at 233a.)  The prosecution then objected on the basis of the court's previous in limine ruling.  Defense counsel explained that he had evidence of "the postponements and … the court docket which would indicate that every time this case comes up for trial, his [the driver's] case follows.  [Frazier's] case gets postponed, that case gets postponed until just after this homicide.  I am simply asking him if he had expectations of that."  (App. at 234a.)  The court responded that the objection was sustained, and defense counsel resumed questioning the driver on another line of inquiry.

A jury found Frazier guilty on all charges, and he was sentenced to life imprisonment for murder, plus twenty to forty years of imprisonment on the other charges.  Frazier appealed, and the Superior Court affirmed his conviction.  Frazier subsequently sought post-conviction relief in state court under Pennsylvania's Post

3

Conviction Collateral Relief Act, which was denied by the Court of Common Pleas, and affirmed by the Superior Court. Thereafter, Frazier filed his federal habeas petition, which the District Court dismissed. We granted a certificate of appealability on the issue of whether Frazier's Confrontation Clause rights were violated when the trial court limited his cross-examination of the driver and whether the federal constitutional aspect of that claim was properly exhausted in the state courts.

## II.    DISCUSSION[1]

Whether or not Frazier failed to exhaust his Confrontation Clause arguments in state court, he has not satisfied the standards of the Antiterrorism and Effective Death Penalty Act ("AEDPA") to show that his Confrontation Clause rights were violated when the trial court restricted his counsel's questioning of the driver.

Under AEDPA, when a prisoner petitions for relief from a state court judgment in a habeas proceeding, we will not grant relief "unless the adjudication of the claim … result[s] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]"[2] 28 U.S.C. § 2254(d)(1). Frazier's argument thus depends on Supreme Court case law interpreting the Confrontation Clause.

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 2241 and 2254. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a). "Where, as here, the District Court based its rulings on the evidence contained in the state court record and did not conduct an evidentiary hearing or engage in any independent fact-finding, our review of the District Court's decision is plenary." *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 227 (3d Cir. 2017).

[2] Another basis for habeas relief under AEDPA arises when a state court ruling

4

The Sixth Amendment guarantees the accused the right "to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. That right includes the right to cross-examine witnesses. *Davis v. Alaska*, 415 U.S. 308, 315 (1974). But that right is not unconditional. The Supreme Court has instructed that "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam)). It "does not grant unfettered rights to cross-examine witnesses." *United States v. Friedman*, 658 F.3d 342, 356 (3d Cir. 2011).

Consequently, the Confrontation Clause does not rob trial judges of the ability to limit cross-examination when appropriate. "On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679.

To begin with, we are skeptical that Frazier can show a Confrontation Clause violation at all, especially given the high standard imposed by AEDPA. Such a violation occurs only where "a reasonable jury might have received a significantly different impression of [the witness'] credibility." *Van Arsdall*, 475 U.S. at 680. Here, however,

_____

"resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). No one, however, contends that that provision is implicated in this case.

5

defense counsel was permitted to ask the driver whether he had charges pending against him and whether he expected favorable treatment in exchange for his testimony. What latitude the trial court may have given the defense to explore bias along that line is not clear, as defense counsel was only prevented from trying to impeach the driver by introducing evidence of the scheduling of the driver's trial. Under those circumstances, it is doubtful that the jury would have "received a significantly different impression" of the driver's testimony had counsel been permitted to cross-examine him about the timing of his pending cases. *Id.*

But even if there were constitutional error, it was unquestionably harmless. *Van Arsdall* instructs that the following factors bear upon harmlessness: "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." 475 U.S. at 684. In this case, while the driver was an important witness who provided non-cumulative testimony, the other factors cut strongly the other way. Frazier was permitted to cross-examine the driver to some extent about his bias, including about whether he had pending cases and whether he expected any benefits in exchange for testifying. Equally important, the driver's testimony was corroborated by significant incriminating evidence, including phone records showing that the passenger called Frazier just before the shooting, the testimony from the mother of Frazier's friend that Frazier was in the area at the time of the shooting, and Frazier's fingerprints that were found on both weapons and ammunition

of the type found at the scene.  In light of this other evidence, the "overall strength of the prosecution's case" was substantial.  *Id.*  In sum, we conclude that Frazier cannot establish the requisite prejudice, so, even if there were constitutional error, it was harmless.

**II.    CONCLUSION**

For the foregoing reasons, we will affirm the District Court's decision.